BARKSDALE v. BENSKIN et al. (No. 5820.)

(Court of Civil Appeals of Texas. San Antonio.
March 28, 1917. Rehearing Denied
April 25, 1917.)

1. DEEDS ⬩25 — CONSTRUCTION — QUIT-
CLAIM DEEDS.

A deed, reciting that the grantor bargained,
sold, released, and forever quitclaimed unto
the grantee all his right, title, and interest in
and to certain tracts and parcels of land, to
have and hold the same, together with all rights
and appurtenances, so that neither the grantor
nor his heirs nor any person claiming under
him should have any claim or title to the same,
reserved a vendor's lien upon the premises.
The deed declared that the vendor's lien note
should be payable only upon condition that the
grantor should make a warranty deed to a
specified section of land. *Held*, that the deed
must be construed as a quitclaim rather than
a warranty deed; the provisions relating to the
vendor's lien not showing any indication on the
part of the grantor to warrant title.

[Ed. Note.—For other cases, see Deeds, Cent.
Dig. § 49.]

2. DEEDS ⬩110 — PROVINCE OF COURT AND
JURY—DIRECTION OF VERDICT.

Where from its terms a deed was ambiguous
and evidence was necessary to determine wheth-
er it was a quitclaim or warranty deed, the
court should submit that question to the jury
instead of directing verdict.

[Ed. Note.—For other cases, see Deeds, Cent.
Dig. §§ 255, 293; Trial, Cent. Dig. § 326.]

3. ADVERSE POSSESSION ⬩71(1) — VENDOR
AND PURCHASER ⬩224 — INNOCENT PUR-
CHASER—QUITCLAIM DEED.

A quitclaim deed requires the grantee to
ascertain his grantor's title, and ordinarily will
not sustain the defense of an innocent purchas-
er, although it will support a claim of title
under the five-year statute of limitations.

[Ed. Note.—For other cases, see Adverse Pos-
session, Cent. Dig. §§ 415, 416, 427, 429; Ven-
dor and Purchaser, Cent. Dig. §§ 469–473.]

4. ADVERSE POSSESSION ⬩106(1) — QUIT-
CLAIM—PROPERTY COVERED.

While a quitclaim deed is a deed within the
five-year statute of limitations (Rev. St. art.
5674), the word "deed" as used in the statute
having the same significance as deeds and con-
veyances used in other statutes, the claim under
a duly registered quitclaim deed is an adverse
claim of only that estate, interest, or right ac-
tually owned by the grantor at the time he exe-
cuted the deed; and hence, where the grantor
had only a leasehold interest in the land, the
claim is adverse only as to the leasehold.

[Ed. Note.—For other cases, see Adverse Pos-
session, Cent. Dig. §§ 604, 619–623.]

5. ESTOPPEL ⬩39 — EQUITABLE ESTOPPEL
—WHAT CONSTITUTES.

A landowner, having conveyed a portion in
fee and received a lease to the premises, quit-
claimed such premises and others. The first
grantee in fee purchased a vendor's lien note,
given the grantor by defendant, the second pur-
chaser. *Held*, that the foreclosure of such
note by the first grantee did not work an estop-
pel, preventing her from asserting her rights
to the premises conveyed to her in fee and
which she leased to the grantor.

[Ed. Note.—For other cases, see Estoppel,
Cent. Dig. §§ 108, 109.]

Appeal from District Court, Edwards Coun-
ty; R. H. Burney, Judge.

Action by K. H. Barksdale against J. M.

Benskin and others. From a judgment for
defendants, plaintiff appeals. Reversed and
rendered.

J. E. Friestman, of Rock Springs, and Will
A. Morriss and Lipscomb & Lipscomb, all
of San Antonio, for appellant. Clarence Mar-
tin, of Austin, and Jno. W. Hill, of Uvalde,
for appellees.

SWEARINGEN, J. Appellant, K. H. Barks-
dale, brought this suit against appellees in
the statutory form of "trespass to try title"
to recover the S. W. ⅞ of survey No. 40 and
the E. ½ of survey No. 44. Appellees an-
swered by a plea of "Not guilty" and limi-
tation. The cause was tried with a jury,
which was instructed by the court to find a
verdict for appellees herein, in accordance
with which verdict the court rendered judg-
ment for appellees.

[1] The record shows the following facts:
Ellis, by general warranty deed, dated June
20, 1903, and filed for record September,
1903, conveyed the fee estate in the land
herein sued for to K. H. Barksdale, in con-
sideration of $4,500 cash paid. K. H. Barks-
dale at once leased the same to Ellis, her
grantor, in consideration for which Ellis
promised to pay the taxes and interest as
they became due to the state. Appellant,
shortly after making this lease, became a
nonresident of the state of Texas. Ellis con-
tinued to use the property himself, and by
his subtenants until December 3, 1906, when
he executed an instrument, conveying to
J. M. Benskin, one of the appellees, the land
involved in this suit, together with a number
of other sections of land. This instrument
was recorded February 7, 1907, and Benskin
complied with all the requirements prescrib-
ed by article 5674, as essential to acquire
land by the five-year limitation. The instru-
ment from Ellis to Benskin was the deed
claimed under to support the plea of five
year limitation and is as follows:

"The State of Texas, County of Edwards:

"Know all men by these presents: That I,
J. J. Ellis of the county of Edwards and state
of Texas, for and in consideration of the sum
of twenty-five ($2,500.00) hundred cash to me in
hand paid by J. M. Benskin of the county of
Edwards and state of Texas, the receipt of
which is hereby acknowledged together with the
execution and delivery to me by the said J. M.
Benskin of his certain promissory note of even
date with this instrument for the sum of fifteen
hundred ($1,500.00) dollars drawing eight per
cent. (8%) interest payable to the order of J.
J. Ellis at Rock Springs, Texas, on the 1st
day of May, 1907, which said note is secured
by a vendor's lien on the premises hereafter con-
veyed and described and which said note is pay-
able only upon the condition that the said J.
J. Ellis makes to the said J. M. Benskin a war-
ranty deed to sec. 53, below with clear title
thereto, do by these presents, bargain, sell, re-
lease and forever quitclaim unto the said J. M.
Benskin his heirs and assigns all of my right,
title and interest in and to that certain tracts
and parcels of land lying and being situated in
Edwards county, Texas, described as follows,
to wit:

---

⬩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes.

| Abst. | Sur. | Cert. | Blk. | Original Grantee. | Acres. |
|---|---|---|---|---|---|
| | 39 | 1740 | 10 | G., H. & S. A. Ry. Co. | 581 |
| | 53 | 68 | 2 | Brooks & Burleson | 640 |
| | 45 | 1743 | 10 | G., H. & S. A. Ry. Co. | 640 |
| | 43 | 1742 | 10 | " | 640 |
| | 61 | 1801 | 10 | " | 640 |
| | 38 | 1739 | 10 | " | 474¼ |
| S.W.⅞ | 40 | 1740 | 10 | " | 527⅝ |
| | 42 | 1741 | 10 | " | 640 |
| | 44 | 1742 | 10 | " | 640 |

"To have and to hold the said premises together with all and singular the rights, privileges and appurtenances thereto in any manner belonging, unto the said J. M. Benskin, his heirs and assigns, forever, so that neither I, the said J. J. Ellis, nor my heirs, nor any person or persons claiming under me, shall, at any time hereafter, have, claim, or demand any right or title to the aforesaid premises or appurtenances, or any part thereof. But it is expressly agreed, understood and stipulated that a vendor's lien is retained on the aforesaid described premises until the aforementioned and described note and all interest thereon has been fully paid when this deed shall become absolute as a quitclaim deed.

"Witness my hand at Rock Springs, Texas, this the 3d day of December, 1906.
"J. J. Ellis."

Ellis' right, title, and interest in several of the surveys above conveyed was only a lease, and not the fee, which fact was understood by Benskin, the grantee.

The questions presented for this court to determine are the following: Is the conveyance from Ellis to Benskin a deed, or merely a quitclaim deed? Is the instrument ambiguous, requiring extrinsic evidence for a correct determination of its intent? Is a quitclaim deed a deed such as is required by the five-year limitation statute?

The granting clause is:

"Bargain, sell, release and forever quitclaim" all of "my right, title and interest in and to."

The habendum clause is:

"To have and to hold the said premises * * * so that neither I, the said Ellis, nor my heirs, nor any person or persons claiming under me shall," etc.

Both the granting and the habendum clauses are in substantially the same terms as the granting and habendum clauses in the deed construed by the Supreme Court in the case of Cook v. Smith (Sup.) 174 S. W. 1094, wherein Chief Justice Phillips uses the following language:

"If the character of the instrument were dependent, alone, upon the construction of these parts of it, there could be no doubt, under the authority of Threadgill v. Bickerstaff, supra (87 Tex. 520, 29 S. W. 757), and Hunter v. Eastham, 95 Tex. 648, 69 S. W. 66, of its being simply a quitclaim deed, since these clauses are in substantially the same terms as the granting and habendum clauses of the respective instruments reviewed in those decisions and there held to be quitclaim deeds."

The Ellis deed now before us contains no words directly declaring that it was the intent by the conveyance to pass a fee-simple estate in the land as in the Cook-Smith Case, supra.

There are, however, two other clauses in the Ellis-Benskin instrument which must be considered in determining the extent of the estate conveyed, whether the fee or only such estate as Ellis had at the time the instrument was executed. A portion of the consideration clause is:

"Which said note is payable only upon the condition that the said J. J. Ellis makes to the said J. M. Benskin a warranty deed to sec. 53 below, with clear title thereto."

Section 53 is one of the surveys sold and described in the Ellis-Benskin conveyance along with the land involved in this suit. The agreement that Ellis would, by a subsequent warranty deed, convey a clear title to survey 53 indicates that the instrument under consideration was not a deed conveying the fee in survey 53, but that a subsequent deed would be necessary for that purpose. It further indicates that Ellis did not claim the fee to 53 at that time. And yet 53 is conveyed by the same granting and habendum clauses as 40 and 44. If the above-quoted condition in the consideration clause could, in any event, prevail over the granting and habendum clauses of the instrument before us, it certainly is not sufficiently clear in this instance to nullify those two clauses. It seems to us that the said condition is in entire harmony with the intent expressed by both the granting and habendum clauses, which intent is that only such interest in the land is conveyed as the grantor actually had at that time.

The only other clause that tends to throw light on the extent of the estate intended to be conveyed is the clause reserving a vendor's lien to secure the payment of the note referred to in the conditional part of the consideration clause. The fact that a vendor's lien is retained in the instrument should be considered together with all other parts of the instrument to determine the real and true intent. Chief Justice Roberts has thus expressed the rule:

"The fact appearing in the deed that the company expressly retained a vendor's lien might be construed as tending to show that it was intended to sell the land with the absolute right of the fee, and not merely the title or chance of the title, and if that fact had been aided by proof of payment of full value of the lot, as, though no adverse interest was claimed on it, or other like circumstances, it might have been left to the jury to determine in connection with the deed whether or not the parties intended to convey such absolute right to the land as that it was not regarded and intended by them to be a mere quitclaim deed to the land, notwithstanding it purported to convey only the company's right and title, and contained only a special warranty. A deed, as other instruments, may be read and construed under the light of the surrounding circumstances under which it was executed." Harrison v. Boring, 44 Tex. 255.

In the present instrument, the vendor's lien seems to have been only on section 53, for it is provided that the note and lien shall be canceled entirely if clear title to 53 is not subsequently deeded to the grantee. Then again a vendor's lien can be retained on any interest or estate in land, though less than the fee. This being true, it follows that retaining a vendor's lien in the instrument

does not expressly, nor by any implication, contradict and nullify the granting and habendum clauses of the instrument here considered. At the very most, the vendor's clause could only raise the question, viz.: Does it contradict and control the granting and habendum clauses? This question is answered in the instrument itself by both the grantor and the grantee, for it is stated therein that in the event the note is paid in full, "this deed shall become absolute as a quitclaim deed."

Considering the instrument in the entirety, taken as a whole, its terms reveal the clear intention of grantor and grantee to convey only such right, title, and interest as the grantor had, whatever that might be, and not necessarily the fee simple absolute title. Such being the intention, the instrument under examination was in fact a quitclaim deed, and not a deed in the sense that it necessarily conveyed the largest estate in the land, which estate is the fee, sometimes called fee simple, sometimes fee simple absolute, and sometimes spoken of as the land itself, probably because usually the words used to convey the fee estate are "bargain, sell, grant and convey" the property or land described, whereas a lesser estate than the fee in land is usually conveyed by using the words, "right, title and interest in the land."

Limitation: Kilpatrick v. Sisneros, 23 Tex. 136; Wofford v. McKinna, 23 Tex. 36, 72 Am. Dec. 53; Kirby v. Pitchfork Land & Cattle Co., 61 Tex. Civ. App. 229, 129 S. W. 1151; McDonough v. Jefferson Co., 79 Tex. 539, 15 S. W. 490; Club Land & Cattle Co. v. Wall, 99 Tex. 595, 91 S. W. 778, 122 Am. St. Rep. 666; Merriman v. Blalack, 56 Tex. Civ. App. 609, 121 S. W. 552; Schleicher v. Gatlin, 85 Tex. 271, especially dissenting opinion by Chief Justice Stayton, p. 276, 20 S. W. 120; Fry v. Baker, 59 Tex. 404; Parker v. Newberry, 83 Tex. 431, 18 S. W. 815; Clifton v. Creason, 145 S. W. 323; Acklin v. Paschal, 48 Tex. 147; Van Rensselaer v. Kearney, 11 How. 324, 13 L. Ed. 703.

Innocent Purchasers: Harrison v. Boring, 44 Tex. 260; Richardson v. Levi, 67 Tex. 359, 3 S. W. 444; Rodgers v. Burchard, 34 Tex. 442, 7 Am. Rep. 283; Dikes v. Miller, 24 Tex. 425; Dikes v. Miller, 25 Tex. Supp. 290, 78 Am. Dec. 571; Taylor v. Harrison, 47 Tex. 460, 26 Am. Rep. 304; Threadgill v. Bickerstaff, 87 Tex. 520, 29 S. W. 757; Hunter v. Eastham, 95 Tex. 653, 69 S. W. 66; Slaughter v. Coke Co., 34 Tex. Civ. App. 602, 79 S. W. 863; Cook v. Smith (Sup.) 174 S. W. 1094; Garrett v. Christopher, 74 Tex. 454, 12 S. W. 67, 15 Am. St. Rep. 850; Bedford v. Rayner Cat. Co., 13 Tex. Civ. App. 623, 35 S. W. 931; Lumber Co. v. Hancock, 70 Tex. 314, 7 S. W. 724; Kempner v. Lumber Co., 20 Tex. Civ. App. 307, 49 S. W. 412; 2 Devlin, §§ 213, 214, 676, 837.

It may not be amiss to here observe that some confusion has been caused by saying that a sale of the fee in land is a sale of the land itself, for Judge Acker, in Garrett v. Christopher, 74 Tex. 453, 12 S. W. 67, 15 Am. St. Rep. 850, held that the word "premises" in a habendum clause meant the land, and that word, therefore, determined the instrument to be a deed as distinguished from a quitclaim deed. This opinion was followed in several cases. However, it was repudiated later by the Supreme Court in Hunter v. Eastham, 95 Tex. 653, 69 S. W. 66, as indicated by Chief Justice Phillips in Cook v. Smith (Sup.) 174 S. W. 1096, 1097.

[2] The instrument was not ambiguous, for its terms express, without contradiction, the intent to convey only such estate as the grantor had. But, if ambiguous because of the vendor's lien clause, then the court erred in peremptorily instructing a verdict, but should have left to the jury the finding of the fact of intent from all the circumstances attendant at the time of executing the instrument. Cook v. Smith (Sup.) 174 S. W. 1094; Harrison v. Boring, 44 Tex. 255; Threadgill v. Bickerstaff, 87 Tex. 523, 29 S. W. 757.

[3, 4] Conceding that the said instrument is a quitclaim conveying only such estate as the grantor had, and not a deed conveying the fee, the last question occurs: Is a quitclaim a deed which is required by article 5674 to support the claim of five-year limitation? The rules of construction to ascertain whether an instrument is a deed or a quitclaim are discussed in many cases involving the issue of innocent purchasers, as well as many involving the five-year limitation. In so far as these cases treat of the rules to determine the character of the instrument, all are relevant. However, those opinions concerning innocent purchasers are not entirely relevant to the question here considered. It is broadly and correctly stated that a quitclaim deed will not sustain the defense of an innocent purchaser. Cook v. Smith (Sup.) 174 S. W. 1095.

It is equally broadly and correctly stated that a quitclaim deed will support a claim of five-year limitation. Merriman v. Blalack, 56 Tex. Civ. App. 609, 121 S. W. 552; Parker v. Newberry, 83 Tex. 430, 18 S. W. 815; McDonough v. Jefferson Co., 79 Tex. 535, 15 S. W. 490; Wofford v. McKinna, 23 Tex. 36, 76 Am. Dec. 53.

The fact that the limitation statute (article 5674), mentions only the word "deed," whereas the innocent purchaser statutes (articles 6823, 6826–6828), mention "deeds * * * conveyances," etc., does not indicate that a deed must convey the fee estate in order to sustain the five-year limitation. The word "deed" used in section 5674, is the same as "conveyance." Parker v. Newberry, 83 Tex. 431, 18 S. W. 815. For the deed to sustain the defense of innocent purchaser, it must upon its face clearly convey the fee simple so that the grantor, his heirs and assigns, will be forever estopped to deny that the pure fee

was intended by him to be conveyed. Van Rensselaer v. Kearney, 11 How. 326, 13 L. Ed. 703.

A quitclaim deed requires the grantee to ascertain for himself the true estate actually conveyed, and to take notice of recorded and unrecorded defects and equities. A claim of five-year limitation under a duly registered quitclaim deed is an adverse claim of only that estate, interest, or right actually owned by the grantor at the time. he executed the deed. 2 Dev. 676; Kilpatrick v. Sisneros, 23 Tex. 136; Acklin v. Paschal, 48 Tex. ·147; Bowles v. Brice, 66 Tex. 729, 2 S. W. 729; Clifton v. Creason, 145 S. W. 323. For instance, if the grantor only owned a one-fourth undivided interest in the land described in the deed which conveys all the grantor's right, title, and interest in the land, the grantee can acquire by the five-year limitation the actual interest owned at the date of the deed by the grantor, and only that. Acklin v. Paschal, 48 Tex. 147; Clifton v. Creason, 145 S. W. 323.

Our conclusion is that the instrument under which Benskin claimed limitation is a quitclaim deed; that this quitclaim deed is sufficient to support a defense of five-year limitation; that the grantee acquired only such a right, title, and interest as was conveyed in the deed under which he claimed. The evidence shows that Ellis only held a lease estate in the surveys 40 and 44, by the terms of which Ellis was to pay the interest and taxes due to the state and enjoy the use of the land. The quitclaim deed from Ellis to Benskin conveyed this estate or right, title, and interest, and no more. Benskin could acquire no greater right, title, and interest than this by claiming the land under his quitclaim deed.

The terms of the lease from Barksdale to Ellis are not sufficiently shown in the records for us to determine the lease estate. It is rather uncertain whether the lease was in writing or oral, though probably in writing.

[5] Appellees under their plea of not guilty attempted to raise the issue that appellant was estopped to maintain the present suit in trespass to try title because of her purchase from Ellis of the $1,500 note made in 1906 by Benskin and secured by a vendor's lien reserved in the quitclaim deed from Ellis to Benskin, and is further estopped because she filed a suit to recover on the note and foreclose the vendor's lien.

Neither the purchase of the note nor the suit to foreclose the vendor's lien securing it could have the effect to estop her from maintaining this suit. The estate or interest conveyed in the quitclaim deed and the vendor's lien on that estate or interest was not even inconsistent with appellant's prior title in fee, and certainly could not destroy her prior right. Van Rensselaer v. Kearney, 11 How. 326, 13 L. Ed. 703. The foreclosure suit did not involve the same cause of action as the trespass to try title suit. They were distinct and not inconsistent with each other.

The issues above discussed are presented to us by the first, second, and third assignments of error, all of which are sustained.

In view of the disposition of this cause made necessary by our ruling upon the first three assignments, we do not rule upon the question presented in the fourth assignment.

Because the evidence before us conclusively shows the fee to the land in suit vests in the appellant, and has not been divested out of her by limitation, we conclude the judgment of the trial court should be reversed, and judgment here rendered for appellant, K. H. Barksdale.

Reversed and rendered.